**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| FRESENIUS MEDICAL CARE ORANGE COUNTY, LLC; DAVITA, INC.; FRESENIUS MEDICAL CARE HOLDINGS, INC., doing business as Fresenius Medical Care North America; US RENAL CARE, INC., | No. 24-3654 D.C. Nos. 8:19-cv-02105-DOC-ADS 8:19-cv-02130-DOC-ADS |
| *Plaintiffs - Appellants*, | OPINION |
| and | |
| JANE DOE, STEPHEN ALBRIGHT, AMERICAN KIDNEY FUND, INC., DIALYSIS PATIENT CITIZENS, INC., | |
| *Plaintiffs*, | |
| v. | |
| ROB BONTA, in his Official Capacity as Attorney General of California; RICARDO LARA, in his Official Capacity as California Insurance Commissioner; MARY WATANABE, in her Official | |

Capacity as Director of the California Department of Managed Health Care; TOMAS J. ARAGON, in his official capacity as Director of the California Department of Public Health,

*Defendants - Appellees.*

JANE DOE; STEPHEN ALBRIGHT; AMERICAN KIDNEY FUND, INC.; DIALYSIS PATIENT CITIZENS, INC.,

*Plaintiffs - Appellants*,

and

FRESENIUS MEDICAL CARE ORANGE COUNTY, LLC, DAVITA, INC., FRESENIUS MEDICAL CARE HOLDINGS, INC., US RENAL CARE, INC.,

*Plaintiffs*,

v.

ROB BONTA; RICARDO LARA; MARY WATANABE; TOMAS J. ARAGON,

*Defendants - Appellees.*

No. 24-3655

D.C. Nos.
8:19-cv-02105-DOC-ADS
8:19-cv-02130-DOC-ADS

| | |
|---|---|
| JANE DOE; FRESENIUS MEDICAL CARE ORANGE COUNTY, LLC; DAVITA, INC.; FRESENIUS MEDICAL CARE HOLDINGS, INC.; US RENAL CARE, INC.; STEPHEN ALBRIGHT; AMERICAN KIDNEY FUND, INC.; DIALYSIS PATIENT CITIZENS, INC., | No. 24-3700 |
| | D.C. Nos. 8:19-cv-02105-DOC-ADS 8:19-cv-02130-DOC-ADS |
| *Plaintiffs - Appellees*, | |
| v. | |
| ROB BONTA; RICARDO LARA; MARY WATANABE; TOMAS J. ARAGON, | |
| *Defendants - Appellants*. | |

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted October 24, 2025
Pasadena, California

Filed April 7, 2026

Before: Ryan D. Nelson and Lawrence VanDyke, Circuit Judges.[*]

Opinion by Judge R. Nelson

---

## SUMMARY[**]

### First Amendment

The panel affirmed in part and reversed in part the district court's summary judgment in an action challenging California Assembly Bill No. 290 (AB 290), which aims to prevent dialysis providers from profiting off patients receiving health insurance premium assistance from non-profit charities.

American Kidney Fund (AKF), a nonprofit charitable organization, dialysis providers Fresenius Medical Care and DaVita (Providers), and others challenged under the First Amendment the following provisions of AB 290: 1) the Reimbursement Cap; 2) the Patient Disclosure Requirement; 3) the Financial Assistance Restriction; 4) the Coverage Disclosure Requirement; and 5) the Safe Harbor Provision.

The panel first held that the Reimbursement Cap, which caps the rate at which providers who donate to charities can be reimbursed by insurers, violates the First Amendment

---

[*] This opinion was issued by quorum of the panel. *See* 28 U.S.C. § 46(d); Ninth Circuit General Order 3.2(h).

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

because it places a burden on the association of Providers and AKF that does not survive exacting scrutiny. While California asserted a sufficiently important government interest in preventing distortion to insurance risk pools that supports the provision, the Reimbursement Cap is not narrowly tailored to achieve that government interest.

The panel next held that the Patient Disclosure Requirement, which requires charities offering health insurance premium assistance to disclose their patients to insurers, violates AKF's associational rights, as well as those of its patients. Because California's asserted interest in defending the Patient Disclosure Requirement is solely in carrying out the Reimbursement Cap, which is unconstitutional, the Patient Disclosure Requirement violates the First Amendment.

Turning to the Financial Assistance Restriction, which prohibits charities from conditioning charitable assistance on certain patient eligibility factors, the panel held that it is unconstitutional. The provision burdens AKF's right to association, and while California has a substantial state interest in protecting vulnerable populations from abusive practices, the restriction is not narrowly tailored.

As to the Coverage Disclosure Requirement, which requires charities that receive donations from providers to inform patients of all health coverage options, the panel held that it does not violate the First Amendment. Because the provision compels factual and uncontroversial information on available health coverage options related to the product/service of a health coverage subsidy provider, and the requirement is reasonably related to California's interest in preventing deception of consumers, it is constitutional

under *Zauderer v. Off. of Disciplinary Couns. of Sup. Ct. of Ohio*, 471 U.S. 626, 637 (1985).

The panel further held that the unconstitutional provisions of AB 290 cannot be severed from the Coverage Disclosure Requirement.

Lastly, the panel held that the challenges to the Safe Harbor Provision, which allowed affected entities a safe harbor to seek an updated Advisory Opinion before July 1, 2020, are moot because AKF took no action before the required date.

## COUNSEL

Ari Holtzblatt (argued), Kelly P. Dunbar, David W. Ogden, and Thad Eagles, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C.; Joshua A. Vittor, Wilmer Cutler Pickering Hale and Dorr LLP, Los Angeles, California; Rachel Shalev, Orrick Herrington & Sutcliffe LLP, New York, New York; Kristopher R. Wood, Orrick Herrington & Sutcliffe LLP, Irvine, California; Eric Shumsky, Orrick Herrington & Sutcliffe LLP, Washington, D.C.; James F. Bennett, Dowd Bennett LLP, St. Louis, Missouri; Abid Qureshi, Michael E. Bern, and Peter E. Davis, Latham & Watkins LLP, Washington, D.C.; Andrew R. Gray, Latham & Watkins LLP, Costa Mesa, California; Ashley C. Parrish (argued) and Edward A. Benoit, King & Spalding LLP, Washington, D.C.; Joesph N. Akrotirianakis, King & Spalding LLP, Los Angeles, California; for Plaintiffs-Appellants.

Christopher D. Hu (argued), Ian M. Fein, S. Clinton Woods, Lisa J. Plank, Deputy Attorneys General; Joshua Patashnik, Deputy Solicitor General; Thomas S. Patterson, Senior Assistant Attorney General; Helen H. Hong, Principal Deputy Solicitor General; Michael J. Mongan, Solicitor General; Rob Bonta, California Attorney General; Office of the California Attorney General, San Francisco, California; Mark R. Beckington, Supervising Deputy Attorney General, Office of the California Attorney General, Los Angeles, California; R. Matthew Wise, Supervising Deputy Attorney General, Office of the California Attorney General, Sacramento, California; for Defendants-Appellees.

David L. Schrader, Morgan Lewis & Bockius LLP, Los Angeles, California, for Amicus Curiae California State Conference of the National Association of Colored People.

Jamie Ostroff and Shari Covington, California Medical Association, Center for Legal Affairs, Sacramento, California, for Amici Curiae California Medical Association.

8     FRESENIUS MED. CARE ORANGE COUNTY, LLC V. BONTA

## OPINION

R. NELSON, Circuit Judge:

California Assembly Bill 290 (AB 290) has several provisions focused on one primary goal: to prevent dialysis providers from profiting off patients receiving health insurance premium assistance from non-profit charities. The key provisions relevant to this appeal: (1) cap the rate at which providers who donate to charities can be reimbursed by insurers (Reimbursement Cap); (2) require charities offering health insurance premium assistance to disclose their patients to insurers (Patient Disclosure Requirement); (3) prohibit charities from conditioning charitable assistance on certain patient eligibility factors (Financial Assistance Restriction); (4) require charities that receive donations from providers to inform patients of all health coverage options (Coverage Disclosure Requirement); and (5) allow affected entities a safe harbor to seek an updated Advisory Opinion before the law takes effect (Safe Harbor Provision).

The district court concluded that the Reimbursement Cap, Coverage Disclosure Requirement, and Safe Harbor Provision were constitutional. It held that the Anti-Steering Provision, Patient Disclosure Requirement, and Financial Assistance Restriction were unconstitutional. The court also concluded that the unconstitutional provisions were severable and AB 290 was not preempted by federal law.

Appellants challenge the constitutionality of each provision under the First Amendment. California cross-appeals to defend AB 290. Because most of the challenged provisions of AB 290 violate the First Amendment and cannot be severed from the remaining constitutional provision, we affirm in part and reverse in part.

## I

## A

More than 1 in 7 American adults—over 35.5 million people—suffer from chronic kidney disease (CKD). End-stage renal disease (ESRD) is the final stage of CKD, when the kidneys no longer effectively filter blood. Around 800,000 Americans suffer from ESRD, disproportionately from underserved, minority communities. Brief for California Medical Association as *Amicus Curiae*, 6; Brief for NAACP as *Amicus Curiae*, 3–8. ESRD can be fatal without treatment; patients must either secure a rare kidney transplant or undergo dialysis. Dialysis is costly as ESRD patients' blood is filtered through a machine in special centers, for up to five hours, three to four times a week.

Because of the extensive time required for dialysis and the difficulties associated with chronic illness, most ESRD patients cannot work. More than 80% of ESRD patients are unemployed. As a result, these patients generally lack access to employer-sponsored health insurance and cannot afford to buy private health insurance. Given the high cost of dialysis, this is a significant financial burden.

Congress has tried to combat this problem. In 1972, it extended Medicare to all ESRD patients regardless of age, 42 U.S.C. § 426-1(a), while also preserving patients' ability to stay on private insurance, § 426-1(a)(1)(A). And in 2010, Congress barred private insurers from denying coverage based on preexisting conditions like ESRD as part of the Affordable Care Act. §§ 300gg-1(a), 300gg-4(a). ESRD patients now have access to both private and public options when securing health insurance to pay for expensive dialysis.

Now required to accept ESRD patients, private insurers negotiate their own reimbursement rates with dialysis providers, like Appellants Fresenius Medical Care and DaVita (Providers).  Those negotiated rates often require private insurers to pay more than the Medicare rate, which is typically at or below providers' costs.  Private insurers are therefore incentivized to have ESRD patients choose public health insurance options, while dialysis providers are incentivized to have ESRD patients on high-rate private insurance plans.

Enter American Kidney Fund (AKF), a nonprofit charitable organization that lobbies for patients with CKD, educates, supports research and prevention programs, and financially supports ESRD patients through its Health Insurance Premium Program (HIPP).  Through HIPP, AKF helps ESRD patients pay their insurance premiums.  To qualify, a patient must already have insurance coverage, and their monthly household income may not exceed their monthly expenses by more than $600.  The average annual income of HIPP recipients in California is less than $32,000.

Patients use HIPP assistance to cover their insurance premiums, whether private or public.  Most patients continue the same coverage they had before their diagnosis, while others change insurance providers after diagnosis.  In 2021, AKF assisted 70,731 ESRD patients nationwide, including 3,174 patients in California, through HIPP.  Roughly 60% of California HIPP recipients maintain public insurance (around 90% of Providers' patients—both nationally and in California—are already on public insurance).  AKF asserts a strict policy of neutrality among insurance providers.

While AKF has more than 80,000 donors, the biggest are the Providers appealing here.  One estimate suggests that

Providers DaVita and Fresenius account for 80% of AKF's funding.  AKF uses part of these donations to fund HIPP assistance.  Providers' donations have been called "fair share" contributions, which are calibrated to cover the amounts patients would require for commercial insurance premiums.  When patients use HIPP assistance to secure private insurance, Providers reap a financial benefit through higher reimbursement rates than if the patient had chosen a public option.

Concerned about conflicts, Congress passed the Beneficiary Inducement Statute, 42 U.S.C. § 1320a–7a, barring medical providers from paying anything of value to induce patients to use their services.  In 1997, AKF and Providers inquired of the United States Department of Health and Human Services Office of Inspector General whether Providers' contributions were lawful under the new statute.  HHS OIG issued Advisory Opinion 97-1, confirming that Providers' contributions were not barred by the statute.  The Advisory Opinion concluded that Providers were "free to determine whether to [contribute] to AKF and, if so, how much to contribute."  "AKF's discretion as to the uses of contributions" was "absolute, independent, and autonomous."  The Advisory Opinion only prevented Providers and AKF from directly or indirectly disclosing that Providers had donated to avoid swaying patient choice. Providers continued to donate.  AKF had to follow the Advisory Opinion to structure HIPP in compliance with the Beneficiary Inducement Statute.

B

In 2019, California passed Assembly Bill 290, the subject of this appeal.  2019 Cal. Legis. Serv. Ch. 862 (AB 290).  Finding that Providers "demonstrated a willingness to

exploit the Affordable Care Act's [preexisting condition] rules for their own financial benefit," AB 290 restricts how Providers and "financially interested entities" (particularly AKF) may interact with patients through premium assistance programs. § 1(b). AB 290 has a series of provisions relevant to this appeal:

**Anti-Steering.** AB 290 states that dialysis clinics (like Providers) "shall not steer, direct, or advise a patient regarding any specific coverage program option or health care service plan contract." § 2(a).

**Reimbursement Cap.** AB 290 attempts to level the playing field between private and public insurers by removing any potential incentive for health care providers to donate to AKF. If a "financially interested entity" like AKF provides premium assistance to a patient, and a provider that has a "financial relationship" with the entity treats that patient, then the provider has their reimbursement rate capped. The donating provider can be reimbursed only at the Medicare rate or a rate determined by an independent state body, rather than the rate negotiated between the provider and the private insurer. Financially interested entities receive most of their funding from "financially interested providers." §§ 3(h)(2)(B), 5(h)(1)(B). Providers are financially interested if they receive a financial "benefit from a third-party premium payment." §§ 3(h)(2)(A), 5(h)(1)(A).

**Patient Disclosure Requirement.** AB 290 requires financially interested entities like AKF to disclose the names of patients receiving premium assistance to private insurers. §§ 3(c)(2), 5(c)(2). Doing so tells insurers which patients have capped reimbursement rates. Without the Patient

Disclosure Requirement, the State has said that the Reimbursement Cap "would effectively be unenforceable."

**Financial Assistance Restriction.** AB 290 restricts financially interested entities like AKF from conditioning financial assistance "on eligibility for, or receipt of, any surgery, transplant, procedure, drug, or device." §§ 3(b)(2), 5(b)(2).

**Coverage Disclosure Requirement.** AB 290 requires financially interested entities like AKF to inform patients of "all available health coverage options, including, Medicare [and] Medicaid." § 3(b)(3).

**Safe Harbor Provision.** AB 290 allowed a safe harbor period for AKF and other entities covered by Advisory Opinion 97-1 to request an updated opinion from HHS OIG. If an updated opinion issued, AB 290 would have only taken effect for AKF if "compliance . . . [did] not violate the federal laws addressed by Advisory Opinion 97-1 or a successor agreement." § 7.

C

AKF repeatedly informed the Legislature that it would cease its charitable operations in California, including HIPP, if AB 290 took effect. For that reason, AKF, along with Providers, Dialysis Patient Citizens (an ESRD patient association), and individual ESRD patients, sought to enjoin enforcement of AB 290. The district court entered a preliminary injunction. In 2024, the district court granted in part the parties' cross-motions for summary judgment. *Doe v. Becerra*, 711 F. Supp. 3d 1112, 1158–59 (C.D. Cal. 2024). The court analyzed the constitutionality of AB 290's key provisions:

**Anti-Steering.** The district court held that the Anti-Steering Provision violated the First Amendment's protection of freedom of speech. California does not challenge this ruling on appeal.

**Reimbursement Cap.** The district court upheld the Reimbursement Cap because the donations from Providers to AKF were "transactional," rather than "expressive." *Doe*, 711 F. Supp. 3d at 1148. The court reasoned that Providers' contributions were not protected expression but a "quid pro quo arrangement that 'secure[s] a later "return on investment" in the form of higher private insurance reimbursements.'" *Id.* at 1147 (alteration in original). The court held that the First Amendment did not apply but still required the state to show "that the Reimbursement Cap directly advance[d] a substantial State interest." *Id.* at 1148. It held that California was advancing its interests in preventing unjust enrichment and distortion of insurance risk pools. *Id.*

**Patient Disclosure Requirement.** The court held that the Patient Disclosure Requirement violates AKF's associational rights. *Id.* at 1150–51. Seeking reconsideration, the State argued that by striking the Patient Disclosure Requirement, the Reimbursement Cap would no longer be enforceable. The district court denied reconsideration.

**Financial Assistance Restriction.** The court held that the Financial Assistance Restriction was unconstitutional as an "unjustified government interference with AKF's choice" to maintain relationships with patients. *Id.* at 1150.

**Coverage Disclosure Requirement.** The court upheld the requirement to inform patients of all available health coverage options, including public options. *Id.* at 1151–52.

The court reasoned that this requirement was valid, compelled commercial speech of purely factual and uncontroversial information reasonably related to a government interest. *Id.*

**Safe Harbor.**  The court held that Section 7's safe harbor for AKF to seek an updated advisory opinion did not compel AKF to petition in violation of its First Amendment rights. *Id.* at 1152.

**Severability.**  The court held that the unconstitutional provisions of AB 290 (the Anti-Steering Provision, the Patient Disclosure Requirement, and the Financial Assistance Restriction) were severable from the rest of the statute. *Id.* at 1156–58.

**Preemption.**  The court held that AB 290 was not preempted by federal law and that neither the Beneficiary Inducement Statute nor the Medicare Secondary Payer Act conflict with AB 290. *Id.* at 1136–40.

After summary judgment, the parties stipulated to a final judgment that preserved their rights to appeal and extended the injunction of AB 290 through the duration of the appeal. Providers, AKF, Dialysis Patient Citizens, and individual plaintiffs timely appealed, and California timely cross-appealed.

II

The district court had jurisdiction under 28 U.S.C. § 1331.  We have jurisdiction to review the district court's partial grants of summary judgment under 28 U.S.C. § 1291 given the stipulated final judgment.

We review a summary judgment ruling de novo. *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117, 1121 (9th Cir. 2024)

(cleaned up).  We "view[] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor."  *Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263, 1274 (9th Cir. 2023) (citing *Bell v. Willmott Storage Servs., LLC*, 12 F.4th 1065, 1068 (9th Cir. 2021)).

### III

We must determine whether each of the five key provisions of AB 290 are constitutional: the Reimbursement Cap, the Patient Disclosure Requirement, the Financial Assistance Restriction, the Coverage Disclosure Requirement, and the Safe Harbor Provision.  We conclude that the first three provisions are unconstitutional and not severable from the remaining constitutional provision, and that the Safe Harbor Provision is moot.

### A

The Reimbursement Cap violates the First Amendment. "We begin, as we must, with the text" of AB 290.  *See Connell v. Lima Corp.*, 988 F.3d 1089, 1097 (9th Cir. 2021). AB 290 mandates that when a provider has "a financial relationship with the entity making the third-party premium payment [to a health insurance plan on behalf of an enrollee], the amount of reimbursement for covered services that shall be paid to the financially interested provider . . . shall be the higher of the Medicare reimbursement or the rate determined [by the State's independent board]."  §§ 3(e)(1), 5(e)(1). "Financial relationship" is not defined, but its plain meaning (on which all parties agree) is that it includes donations from Providers.

By its plain text, AB 290 caps the reimbursement Providers can receive if they make charitable donations to

entities like AKF.  By capping Providers' reimbursement rate only if they have a financial relationship with (i.e., donate to) AKF and similar entities, AB 290 burdens Providers' ability to charitably contribute.  To determine the Reimbursement Cap's constitutionality, we must decide whether Providers' burdened charitable contributions to AKF are protected under the First Amendment, either as association or speech.

The Supreme Court has "long understood as implicit in the right to engage in activities protected by the First Amendment is a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984).  AKF is an expressive association that engages in various protected activities, including educational and lobbying efforts on behalf of Americans struggling with CKD.  Expressive associations are "protected by the First Amendment's expressive associational right." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000).  "Freedom of association for the purpose of advancing ideas and airing grievances is protected by the Due Process Clause of the Fourteenth Amendment from invasion by the States. . . . not only against heavy-handed frontal attack, but also from being stifled by more subtle governmental interference." *Bates v. City of Little Rock*, 361 U.S. 516, 523 (1960) (cleaned up); *see also Americans for Prosperity Found. v. Becerra*, 919 F.3d 1177, 1179 (9th Cir. 2019) (Ikuta, J., dissenting from denial of rehearing en banc).

But the First Amendment does not only protect the rights of expressive associations; it also protects the rights of donors to those expressive associations.  Laws that "impose[] a widespread burden on donors' associational

rights" are subject to "exacting scrutiny." *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 618 (2021). Because the Reimbursement Cap effectively burdens Providers' First Amendment right to donate to an expressive association, it triggers exacting scrutiny.

California tries to distinguish AB 290 from other laws which triggered exacting scrutiny by arguing three purported differences: (1) disclosure requirements are substantively different than financial burdens, (2) the laws at stake in those cases were intended to chill expression, and (3) most often those cases involved political contributions, rather than charitable contributions. We address each in turn.

As for the first distinction, unconstitutional government action may "seek to impose penalties or . . . attempt to require disclosure of the fact of membership . . ." *Jaycees*, 468 U.S. at 622–23. How the government burdens association does not matter—what matters is that the right to expressive association is being burdened. If disclosure requirements were the only associational burden that triggered exacting scrutiny, the government could enact any number of non-disclosure-based methods to burden First Amendment freedoms. The First Amendment does not allow burdens on expressive association simply because the government uses methods other than disclosure.

On the second distinction, whether California intended a chilling effect is immaterial to whether AB 290 triggers exacting scrutiny. "This type of scrutiny is necessary even if any deterrent effect on the exercise of First Amendment rights arises . . . [even] indirectly as an unintended but inevitable result of the government's conduct . . ." *Buckley v. Valeo*, 424 U.S. 1, 65 (1976) (citation omitted). California points out that Appellants do not allege that the state is trying

to "thwart the mission of a controversial advocacy group." But that is not the standard. AKF's mission of helping ESRD patients, though uncontroversial, still receives First Amendment protection. The key question is whether the law will produce a deterrent *effect* on Providers' or AKF's right to associate. Capping Providers' reimbursements to a substantially lower rate if they choose to donate to AKF will do so, meaning this distinction falls flat.

While a closer call, we reject the third distinction, too. California argues that exacting scrutiny would apply "only for charitable contributions that are primarily expressive in nature." In its view, incidental burden of expression by a valid regulation of economic conduct does not trigger exacting scrutiny. California argues that cases like *McCutcheon v. FEC*, 572 U.S. 185 (2014), are inapt because donations to political associations are necessarily expressive, while charitable contributions can be "non-expressive," or their expression can be only incidentally burdened.

California incorrectly sees contributions as an all-or-nothing proposition—either a contribution is "primarily expressive," or it is "non-expressive." But, as California concedes, Providers' donations are expressive at least in part and therefore qualify for expressive protection. That AKF is not a political campaign or association is irrelevant. The petitioners in *Bonta* were not political campaigns but charities. *See* 594 U.S. at 602. Protection for expressive association rights extends beyond political contributions to "a wide variety of political, social, economic, educational, religious, and cultural" associations. *Jaycees*, 468 U.S. at 622. And if expressive at all, the associational rights of AKF and Providers are not merely incidentally burdened. AKF has stated that it will have to cease operations in California

if AB 290 takes effect, and Providers will largely stop donating.

Because AB 290's Reimbursement Cap burdens First Amendment rights, it triggers exacting scrutiny. [1]    For burdens on charitable contributions to expressive associations, courts apply the "exacting scrutiny" standard, which requires "a substantial relation between the [law in question] and a sufficiently important governmental interest, and that the [law in question] be narrowly tailored to the interest it promotes."    *Bonta*, 594 U.S. at 611 (citation omitted).    Although this test has been applied mainly in the political context, "'it is immaterial' to the level of scrutiny 'whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters.'" *Id.* (quoting *NAACP v. Alabama*, 357 U.S. 449, 460–61 (1958)).

California originally asserted that its interest was to curb harmful patient "steering."    AB 290 § 1(e).    This rationale undergirded the "Anti-Steering" provision which the district court held unconstitutional, and California does not challenge on appeal.    Instead, California defends two interests behind AB 290's Reimbursement Cap—preventing unjust enrichment for Providers who donate to AKF and preventing insurance premiums from rising because of distorted risk pools from ESRD patients.

California's inclusion of unjust enrichment as a sufficiently important government interest works only if it continues to defend harmful steering as an interest.    While

---

[1] Because we hold that the Reimbursement Cap violates the First Amendment right to association, we need not reach the merits of whether it burdens the First Amendment right to free expression.

Providers are enriched by their financial relationship with AKF, they do not exploit private insurers, which negotiate their rates independently with Providers. The enrichment must then come at the expense of patients either harmfully steered or whose premiums have increased because of harmful steering. Indeed, California argued that "[t]his practice [of harmful steering] result[s] in an unjust enrichment for Providers." And although evidence of harmful steering would justify an interest in preventing unjust enrichment, California has not produced enough evidence to sustain the argument that AKF or Providers are steering patients, let alone harmfully steering. *Doe*, 711 F. Supp. 3d at 1143–44 (concluding that California could not "identify a single California patient steered into a private insurance plan by a dialysis provider or third-party payer" and "has not met its burden of showing patient harm that has resulted from this supposed steering"). This purported interest thus falls flat.

California's other purported interest in preventing distortion to insurance risk pools has more merit. States have longstanding interests in regulating their insurance markets. *See Operating Eng'rs Health & Welfare Tr. Fund v. JWJ Contracting Co.*, 135 F.3d 671, 677 (9th Cir. 1998) (discussing "areas traditionally left to state regulation-such as the state's exercise of police powers and its regulation of health, safety, banking, securities, and *insurance matters*" (emphasis added)). While the numbers are uncertain, California's expert did find that "individual-market plans in California would likely experience a premium increase because of the distortion of the risk pool caused by an influx of ESRD patients." Curing such a distortion would be a sufficiently important government interest under exacting

scrutiny, given the long tradition of state regulation of insurance pools to protect consumers and patients.

But the Reimbursement Cap is not narrowly tailored to achieve that government interest. "While exacting scrutiny does not require . . . the least restrictive means of achieving [government] ends, it does require that they be narrowly tailored to the government's asserted interest." *Bonta*, 594 U.S. at 608.

The government could take far too many alternative measures to prevent the distortion of risk pools by ESRD patients for the Reimbursement Cap to satisfy narrow tailoring. As Providers note, "the State could have directly regulated insurance premiums or reimbursement rates, provided subsidies, or created incentives for additional competitors to enter the dialysis market." California insists that AB 290 is a direct regulation on reimbursement rates. But AB 290 only targets providers who donate to charities like AKF. Had California simply dropped this burden on charitable contributions and capped reimbursement rates for ESRD patients at the Medicare rate (or other rate determined by the State's independent board), the same effect might have been achieved without burdening Providers' and AKF's rights to association.

The overbreadth issues present in AB 290 also demonstrate a lack of narrow tailoring. While invalidity because of overbreadth has some constitutional defects, *see Bonta*, 594 U.S. at 621 (Thomas, J., concurring in part and concurring in the judgment), it nonetheless informs whether a law is narrowly tailored. AB 290 does not define "financial relationship" and defines "providers" broadly. §§ 3(h)(4), 5(h)(4). So any donation from any health care provider could result in that provider suffering a reimbursement

penalty from any patient receiving support from the charity that provider donated to.  AB 290 thus covers "general physicians, psychiatrists, allergists, [and] dentists" who provide health care to any kind of patient, even those who do not have ESRD.

Moreover, AB 290 restricts "financial relationships" even more expressive and less substantial than Providers and AKF.  A nephrologist earmarking a $10 charitable contribution to AKF for its education and advocacy program would still be burdened under the law in the form of the Reimbursement Cap for any of her HIPP patients.

The Reimbursement Cap places a burden on the association of Providers and AKF that does not survive exacting scrutiny.  While a sufficiently important government interest undergirds the provision, it fails the narrow tailoring prong.  The Reimbursement Cap therefore violates the First Amendment.

## B

The Patient Disclosure Requirement violates AKF's associational rights, as well as those of its patients.  Under AB 290, financially interested entities like AKF must "[d]isclose[] to the health insurer, prior to making the initial payment, the name of the insured for each policy on whose behalf a third-party premium payment . . . will be made." §§ 3(c)(2), 5(c)(2).

AKF is an expressive association that engages in lobbying, educational, and charitable efforts all protected by the First Amendment.  *See supra*, at 17.  California contends that compelled disclosure requirements only trigger exacting scrutiny when the expressive association is controversial to the degree that disclosure would chill association.  This

argument lacks merit. "Regardless of the type of association, compelled disclosure requirements are reviewed under exacting scrutiny." *Bonta*, 594 U.S. at 608. The Patient Disclosure Requirement thus triggers exacting scrutiny. *See id.*

Under exacting scrutiny, California must establish a sufficiently important governmental interest. *Id.* at 611. California's asserted interest in defending the Patient Disclosure Requirement is solely in carrying out the Reimbursement Cap. But as discussed above, the Reimbursement Cap is unconstitutional, *see supra*, at 16–23, and California may not have as its stated interest the effectuation of an unconstitutional provision. Because no sufficiently important governmental interest is furthered, the Patient Disclosure Requirement violates the First Amendment.

## C

The Financial Assistance Restriction violates the First Amendment right to expressive association: AKF's right to associate with whom it chooses. AKF's expressive association right protects against "[t]he forced inclusion of an unwanted person in a group." *Boy Scouts*, 530 U.S. at 648. The Financial Assistance Restriction requires AKF to not "condition financial assistance on eligibility for, or receipt of, any surgery, transplant, procedure, drug, or device." AB 290 §§ 3(b)(2), 5(b)(2). Doing so forces AKF to include ESRD patients who are planning on a kidney transplant in their HIPP program, despite AKF's desire as an expressive charity to include primarily ESRD patients undergoing dialysis. AKF associates with its group members (HIPP recipients) through financial assistance, and imposing conditions on AKF's ability to do so burdens

expressive association.  AKF has a right to choose which patients to support.  AB 290 directly interferes with that right.  California may not "interfere with the internal organization or affairs of the group." *Jaycees*, 468 U.S. at 623.

California argues that the district court read the plain text of the statute too literally, and that AB 290 would not interfere with AKF's right as an expressive association to engage in charity with whom it desires.  Instead, California contends that the provision is a standard consumer-protection regulation traditionally used for health care and health insurance.

But the cases California cites dealt only with plaintiffs suing their insurers for violations of regulations on insurance itself.  *See Morris v. Cal. Physicians' Serv.*, 918 F.3d 1011, 1012–13 (9th Cir. 2019); *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1055 (9th Cir. 2018).  AB 290 does not regulate health care or health insurance directly, but the conditions on which an expressive charitable association might provide charitable giving.  So AB 290 falls closer to the regulations on expressive association in *Bonta* and *Boy Scouts*, which triggered First Amendment protection, than a standard consumer-protection insurance regulation.  The Financial Assistance Restriction regulates AKF's right to associate with patients consistent with its organizational mission.

Reviewing under exacting scrutiny, California's asserted interest in the Financial Assistance Restriction is to "prohibit[] financially interested entities from engaging in . . . abusive practices . . . for instance, withdrawing premium support for ESRD patients based on their chosen course of treatment."  California does have a substantial state interest in protecting vulnerable populations (like ESRD

patients) from abusive practices, even from expressive associations and charities. *See Washington v. Glucksberg*, 521 U.S. 702, 731 (1997) ("[T]he State has an interest in protecting vulnerable groups—including the poor, the elderly, and disabled persons—from abuse, neglect, and mistakes.").

But the Financial Assistance Restriction again lacks narrow tailoring. As the district court noted, "the State's proffered limitations—that the provisions only apply to those 'certain practices'—are found nowhere in the language of sections 3(b)(2) and 5(b)(2)." *Doe*, 711 F. Supp. 3d at 1149. While the State need not employ the least restrictive means, *Bonta*, 594 U.S. at 608, "exacting scrutiny" requires some narrow tailoring to achieve the State's substantial interest. Prohibiting AKF from "condition[ing] financial assistance on eligibility for, or receipt of, any . . . transplant or procedure" is not narrowly tailored enough to pass constitutional muster. The text eliminates AKF's ability to determine who its patients will be. This burdens AKF's right to associate far more than would be required to fix the narrow problem of the abusive practices California cites.

The Financial Assistance Restriction burdens AKF's right to association. While California has a substantial state interest, it has not shown narrow enough tailoring. The Financial Assistance Restriction is therefore unconstitutional.

### D

#### 1

AB 290's Coverage Disclosure Requirement does not violate the First Amendment. The Coverage Disclosure Requirement mandates that AKF and similar entities

"inform an insured annually, of all available health coverage options, including but not limited to, Medicare, Medicaid, individual market plans, and employer plans, if applicable." AB 290 §§ 3(b)(3), 5(b)(3). Unlike the Reimbursement Cap, the Patient Disclosure Requirement, and the Financial Assistance Restriction, the Coverage Disclosure Requirement does not burden the expressive association between AKF and providers or patients.

Instead, it simply compels AKF to inform patients of their available health care options. The provision operates analogously to constitutionally permissible commercial speech regulations, rather than burdening the expressive association AKF has with its patients. *See Zauderer v. Off. of Disciplinary Couns. of Sup. Ct. of Ohio*, 471 U.S. 626, 637 (1985). The State may compel disclosure of "factual and uncontroversial information" to consumers, *id.* at 651, so long as that disclosure does not burden expressive association, *Bonta*, 594 U.S. at 606–08.

AB 290 compels disclosure "of all available health coverage options, including, but not limited to, Medicare, Medicaid, individual market plans, and employer plans, if applicable." §§ 3(b)(3), 5(b)(3). This factual and uncontroversial information satisfies the first *Zauderer* requirement.

The Coverage Disclosure Requirement is also "reasonably related to the State's interest in preventing deception of consumers." *Zauderer*, 471 U.S. at 651. While California's asserted interest in preventing harmful steering has faced serious challenge, any possible steering might be deterred by a requirement for AKF to share all available health coverage options with the HIPP recipients. *See CTIA—The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832,

844 (9th Cir. 2019) ("[T]he governmental interest in furthering public health and safety is sufficient under *Zauderer* so long as it is substantial.").

The Supreme Court has held *Zauderer* inapplicable when the compelled speech is "in no way relate[d] to the services that [the regulated entity] provide[d]." *Nat'l Inst. of Fam. & Life Advocates v. Becerra*, 585 U.S. 755, 769 (2018). But while AKF does not provide health coverage, it does provide subsidies for health coverage. Therefore, the factual and uncontroversial information on available health coverage options is "related" to the product/service of a health coverage subsidy provider, at least under the *Zauderer* framework. The Coverage Disclosure Requirement thus passes constitutional muster.

2

That does not, however, end the inquiry. We still need to determine whether AB 290's unconstitutional provisions are severable from the Coverage Disclosure Requirement. "'Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem,' severing any 'problematic portions while leaving the remainder intact.'" *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 508 (2010) (quoting *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 328–29 (2006)). We look to California law to determine whether a California ordinance can be severed. *Vivid Ent., LLC v. Fielding*, 774 F.3d 566, 574 (9th Cir. 2014).

California law first considers whether the statute has a provision either creating a presumption or prohibition of severability. *See In re D.L.*, 93 Cal. App. 5th 144, 162 (2023). AB 290 has no severability provision, so we turn to the three criteria laid out by the California courts to

determine whether unconstitutional provisions in the statute are severable.

To sever such a provision, it "must be grammatically, functionally, and volitionally separable." *Cal. Redevelopment Ass'n v. Matosantos*, 267 P.3d 580, 608 (Cal. 2011) (citation omitted). As relevant here, "[v]olitional separability depends on whether the remainder would have been adopted by the legislative body had the latter foreseen the partial invalidation of the statute." *Id.* (cleaned up).

AB 290 is intended "to protect the sustainability of risk pools within the individual and group health insurance markets, shield patients from potential harm caused by being steered into coverage options that may not be in their best interest and to correct a market failure that has allowed large dialysis organizations to use their oligopoly power to inflate commercial reimbursement rates and unjustly drive up the cost of care." § 1(i). So under the volitional severability prong, we must determine whether the California legislature would have passed the Coverage Disclosure Requirement as a standalone provision to advance the above-stated goals.

The record shows that about 90% of Providers' patients (both nationally and in California) are already on public insurance. So public insurance is already the default option. Typically, the purpose of providing more information is to change the default option. Here, that would push people away from public insurance to private options. For nearly all patients (who, by definition, already know about the public option, because they are on it), providing more information about both private and public insurance (and the availability of financial assistance for insurance premiums), if it does anything, it would cause them to switch to private insurance—contrary to the stated

purpose of AB 290.  Some low-income patients might assume private insurance is too expensive for them, but when provided with the information mandated by the Coverage Disclosure Requirement, they might decide they can afford it.

This is exacerbated by the fact that the Anti-Steering provision was struck down by the district court and is not challenged on appeal.  This means that AB 290, as it stands, requires Providers and AKF to inform patients of all possible health coverage options, but then they are no longer prohibited from steering a patient to private insurance.  Once Providers or AKF inform the patient of "all available health coverage" options as required, if the patient asked what the best option for her was, Providers and AKF could engage in the steering the Legislature wanted to prevent.  It is hard to imagine the Legislature passing this vestigial section absent the Anti-Steering provision, when the status quo appears to keep AKF and Providers largely neutral, at least to patients, when it comes to coverage options.

To some extent this is speculation.  But the volitional inquiry invites speculation about what the legislature would have done if it was only allowed to keep the constitutional provision.  There is no compelling reason why a rational legislator would think the Coverage Disclosure Requirement, without its sister provisions, would do much to prevent steering from public to private insurance.  And since 90% of the at-issue patients already have public insurance, the opposite might result from letting this provision stand on its own.  It is also likely that the legislature would not have thought that merely enacting the Coverage Disclosure Requirement by itself was worth it— especially without the Anti-Steering provision.  *See Matosantos*, 267 P.3d at 607.  If the California legislature

would indeed pass this constitutional provision without its sister provisions, then it may do so. But as it currently stands, the unconstitutional provisions cannot be severed from the Coverage Disclosure Requirement.

E

AB 290's Section 7 Safe Harbor Provision, and the associated issues about whether it violated AKF's right to petition, are moot. The Safe Harbor Provision stated that AB 290 would become operative for financially interested entities like AKF "unless one or more parties to Advisory Opinion 97-1 requests an updated opinion from the United States Department of Health and Human Services Office of Inspector General" and notifies the California Health Care and Insurance Departments before July 1, 2020. AB 290 § 7. In that case, AB 290 would become operable as to the requesting entity only after the updated Advisory Opinion confirmed that AB 290 did not conflict with the Beneficiary Inducement Statute.[2]

The Safe Harbor Provision is tied specifically to a date by which AKF should have requested an updated Advisory Opinion: July 1, 2020. AB 290 § 7. After that date, without a request, the law takes effect on AKF. Though the district court enjoined AB 290 before that date, the statute only allowed a safe harbor if AKF acted before July 1, 2020, independent of the injunction. Because no action was taken before the required date, Section 7 has no applicable effect. Because the California legislature chose a specific date that has passed (rather than a generic date, such as "when the statute takes effect"), we can provide no remedy of the Safe

---

[2] Because we hold AB 290's provisions unlawful on other grounds, we do not reach the merits of AKF's preemption claims.

Harbor Provision.  Once "it becomes impossible for the court to grant any effectual relief whatever to the prevailing party," "any opinion . . . would be advisory."  *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (cleaned up).  As a result, any challenge to the Safe Harbor Provision is moot.

IV

The district court wrongly held that the Reimbursement Cap was constitutional.  It correctly held that the Patient Disclosure Requirement and the Financial Assistance Restriction were unconstitutional and that the Coverage Disclosure Requirement was constitutional, although the unconstitutional provisions cannot be severed.  And challenges to Section 7's Safe Harbor Provision are moot.

**AFFIRMED IN PART, REVERSED IN PART.**

Each party shall bear its own costs.